Good morning. May it please the court. My name is Eitan Kaslyanich and I am representing Michael Shuff in this appeal. This case has gone on for a long time. Mr. Shuff was injured on the job all the way back in February 2001. He's alleging a disability onset date of September 2001. And really the evidence, the medical evidence, testimony, pretty much everything from September 2001 through February of 2006 shows that he could not work during that time period. Oh, I think the record is exactly the opposite. That's actually what I was going to – I think the evidence is much better kind of post-2006 for your client. I think in that period from 2001 to 2006 it's just disastrous from the standpoint of the argument you want us to accept. Well, I'll accept that. You know, the funny thing is, it's not funny, but this is the reality. He never applied for benefits until July 2010. The earliest he can get benefits is July 2009. The time period between 2001 and 2006, it would affect the amount of his check a slight amount, but that's not the main issue. He's not even going to get anything from it. Well, the reason I focused on that time period is, of course, because the ALJ cited a series. I count them as really – I think it's five different doctors, some of whom were his own treating physicians, I think, who evaluated him, and in that time period each of them came to the conclusion that, sure, he can't go back and do the work he was doing before, but he most definitely can do other work. And that's why it just seemed like if we're going to review the ALJ's decision for substantial evidence, why couldn't the ALJ rightly point to those five doctors in that time period and conclude that, you know what, he's not incapable of doing all gainful employment? Well, I guess I'll spare us from having to fight about that time period. Great. Okay? And focus on the time period since then. And when's the DLI date, 2008? The date less insured is in 2008. It's September – oh, my God. But it's 2008. It is in 2008. And I can't read my own writing. There we go. September 30, 2008. So ultimately, after all those years – and I disagree with your characterization of the earlier time period because it kind of went back and forth. He tried – We could go through them. You don't have to. I just – I'm saying I'm very sympathetic to your client. I think today it's probably true that he cannot work. Today it's – yes, today it's over the top. That's what I'm saying. But the period the ALJ – in terms of the ALJ's evidence, it was really – I have 2002 through 2006. There's a series of five doctors who all consistently say that he can't do the old work, but he can do some work. And so then I look, okay, well, is there something between 2006 and 2008? And there was nothing. So how do we say that ALJ, you know, messed up enough – So that's what I'd like to focus on now. Okay. First of all, when February – in February 2006 is when he completed a whole bunch of, like, work hardening and program. And at that point is when it seems like they basically said he could work. He went to work. He went back to work doing – you know, working with accommodations, being a meat cutter again. And he made it from April to July of 2006. And this was at a job for a friend where they allowed him to lie down. They allowed him to go out to his car and take – and rest when he couldn't keep working, couldn't be on his feet. By July 2006, he couldn't do it anymore. He had to quit. He then found another position, and I believe it was towards the – in September of 2006, where they allowed him to work only three days a week. And it was four to eight hours a day. And he was running a small meat department in a small store. He managed to do that until February of 2007. But by February of 2007, it was hurting him so bad, not only couldn't he even do the four to eight hours three days a week, his wife was coming in and helping him because he couldn't do even the basic job. So I think then from – But there's some evidence in the record that that second job he quit in part, as he said, the company was going a different direction. Am I wrong about that? Well, the business was being sold. He had – I don't know if you're familiar with Port – With what? The store he was working in was a small, like, meat department in a store, and it was being sold, and there were issues going on like that. You're not familiar with – I'm familiar with something. Port Townsend. I know Port Townsend very well. There you go, Aldrich's. I grew up in this area. I look like I'm from California, but I'm from here. Aldrich's. It's an institution in Port Townsend. Anyway, he – even when he was working there, he was working – he was earning less than substantial gainful activity in that entire job. He never made it to the SGA level. And he was only working three days a week, four to eight hours a day. And then by February of 2007, that was it. He threw in the towel. The main evidence, then, of his – you know, you can't evaluate a person who's had a failed back. He had two back surgeries. He's in excruciating pain, and he was not doing anything. He was basically – you know, he had done exercise for a long time to try to get his strength up, to try to be healthy. Couldn't even do that anymore. He basically – his testimony is very clear about how limited his activities are and have been since he had to stop working at Aldrich's. And then through 2008, he started going to a – I'm sorry. I'm curious. I want to follow up on sort of Judge Watford's line of questioning to you. So the ALJ notes that you're claiming disability since September 22, 2001. So if the court thought in our heart of hearts that your client was not disabled from 2001 for reasons largely described by the ALJ and found in the medical records, what – and so if we were to affirm the judgment here, what remedy do you have to go back to the Social Security Administration and say, okay, forget 2001. He's clearly disabled today. Can you go back to SSA and make a renewed claimant but just claim a different year? Well, we can't – no, we can't. If you completely affirm the decision for the entire time period, he will never get Social Security disability. Why is that? Ever? Because his insured status expired on September 30th of 2008. So – and let me flip it a little bit. If we concede that he was not disabled or at least that the ALJ's decision was not erroneous from 2001 until 2007, February 2007, when he left Aldrich's because he couldn't do it anymore, if he was to be found disabled beginning in March of 2007, he's never worked since then and he would qualify on that. But if – so you can either remand it for a new determination from the time period from when he stopped working at Aldrich's or you could find him disabled as of March of 2007 when he stopped working at Aldrich's. The reason I think you should do the latter and find him disabled at least since March of 2007 is his treating nurse practitioner, Mr. Brown, basically said that – I've been watching this guy for – I've known him since 2001. He basically said he was disabled since 2001 and the ALJ could have adopted that decision. He chose not to and you have substantial evidence review here. So you can't disturb it. If there's some evidence that says he's disabled and some that says he is not, you know, it's not – I can't prove it. But what discretion does this court have if you've made a claim from 2001 and the ALJ made a judgment on that basis affirmed by the appeals council and by the district court? Do we have to revise and say, well, you came here and played for everything and you lost on that, but, gee, we think that maybe you had a better case if you did something different. Does this court really have the ability to be able to revise the judgment of the Social Security Administration and say, well, 2001 to roughly 2006, 2007, no, but after that, maybe? Yes, you do, and the reason you do is because the ALJ didn't rule on whether or not he was disabled from just in 2001. Did you ask him to? Did you ask him to rule whether he was disabled after 2007? Yes. We asked him to rule that he was disabled prior to his date last insured. The decision was limited because it was Title II only. He ruled from the alleged onset date of September 2001 through September 30th of 2008. So he could have said exactly what you're telling me, you know, what might make sense here is that first seven, six years, whatever, he was not disabled enough. I mean, he had periods of disability, periods where he had back surgery, he was completely laid up, but then he got better sort of, and then he, et cetera. Well, put that aside. The ALJ could have said, okay, I don't think, you know, I think that the, he has to rule based on the preponderance of the evidence, and he could say, well, in my opinion, the preponderance of the evidence shows that he was not disabled between 2001 through the time he was working at Autergis. But when he finally couldn't even do that part-time work, which wasn't even SGA, I think that since then there's no evidence that he could function and do any type of full-time work without having to lie down. Okay, so let me just, I confess ignorance as to how this system works. So if your client were to be found disabled, let's say, as of like a month before the date last insured, does that mean that he gets benefits going forward? Yes. Forever? Yes. But just it's limited? Well, until he turns 62 or 66. Okay. But, yeah, it's not like you just get a month's worth of benefits. No. But it's just you're restricted in terms of what you get going back? Is that the effect of not? Well, it has no effect on going back in this case because he didn't apply for benefits until 2010, July 2010. Oh, I see. He will not, even if you found him disabled in 2007 or 2008, his first month of benefits won't be until July of 2009. Yeah, I see. But then it would continue forward from there. And so, yes, the ALJ could have done that in his decision. The ALJ, they're known to look at the, you know, they review the file and they say, well, counselor, it looks to me like I can't support finding a disability through February 2007, but March of 2007 seems reasonable. Are you willing to amend your alleged onset date? And obviously, in this case, I would have done that. It didn't benefit him anything in terms of – Did you offer to do that? Well – I mean, it looks like you played all your cards for September 22, 2001. See, my client knows that he has not been able to work since 2001 when he injured his back. Right. That seems to be disputed in the record. And it's only disputed here because we're on appeal. Is there any place, counsel, where you went to the ALJ and said, look, in the alternative, you can at least find him unable to work as of, let's say, 2008? I think I actually did that at the hearing. Can you point that to us in the record? I can't. I'll sit down and I'll look for that. But the fact is he – until the – once again, my client, he wasn't sitting there. He couldn't make it to the hearing. He's on the phone. He could not even – can't even leave his house. And until – I mean, through the hearing, until the ALJ wrote his decision, you know, we've got a different reality here. Your reality is you're reviewing the substantial evidence support what the ALJ said. Well, let me ask you then. Does substantial evidence also support a finding of disability in 2001? And the answer to that is yes, it does. And that's irrelevant here. At the hearing, the ALJ could have ruled you were disabled in 2001 and whatever 2006, and then you had this period, about a year and a half, where you were working. You did your best, and then it didn't work out again, and then you were disabled again. The ALJ could have done that. Who's your – what's your strongest evidence after, let's say, 2007 or 2007-2008, that he was disabled? There are two pieces of evidence. One is Mr. Brown's medical source statement from August of 2009, and the other is they had him evaluated by an examining orthopedist, Alan Greenwald, in June of 2009, and he said, that's it. This guy cannot work. He's messed up. And that's the strong – Yeah, but he referred him elsewhere, and that's why the ALJ discounted it. That's Greenwald. Yes, Greenwald. And Brown is not an acceptable medical source. He's not, but that's a funny thing, because they've just changed the rules and made him acceptable. But those are your two – that's your two strongest pieces of evidence? Those are the two strongest pieces of evidence. And Greenwald does the exam in 2009. It's actually after the time. It is. It is. But I think that based on the evidence, I think even it's in – he didn't come out and say this, but it relates back. According to the ALJ, he said that the opinion was eight months after the insured period closed. It's not like he had just injured his back. But in your view, those are your two strongest. Absolutely. And Judge Kuhnhauer, with respect to Dr. Greenwald, says that the opinion was rendered many months after the DLI, true, and nothing in that opinion indicates that it intended to relate back to the relevant period. Well, the doctor had no – he wasn't – he was just evaluating him. He had no idea that that was a relevant thing he was even supposed to – nobody asked him. Right, right. I understand that. But it's – Dr. Greenwald isn't – we can infer that if he is disabled to the degree that Dr. Greenwald finds him at that date, we can infer that he was disabled earlier, but that was not specifically the question asked of Dr. Greenwald. That's correct. Yeah, yeah. I would like to reserve my five seconds for rebuttal. Listen, we'll make sure you get a chance what you need to say. We won't restrict you to five seconds. I understand. Thank you. May it please the Court, my name is Heather Griffith, here representing the Commissioner. Based on the previous questions, I'd like to focus on the time period post-2006. During this time period, Mr. Shuff tried working, and he claims he was unable to continue to work in those capacities. The problem with that is those jobs were very physically demanding jobs. The ALJ found that he could work at a sedentary level, which requires much less physical requirements than the jobs he was working at as a meat cutter in the grocery store. Those jobs required stocking shelves and things like that, that required heavier lifting, walking, and standing than what the ALJ eventually found that he could do. Also, Mr. Shuff relies on the nurse practitioner, Brown. Nurse practitioner Brown had his opinion that he said applied to the entire period all the way back to 2001. It is clear from looking at the record that Mr. Shuff had back surgeries. He improved with time. He completed the pain management clinic in 2006, after which several doctors opined that he could do work at the medium and the light level, at a higher level than what the ALJ had found. Nurse Brown didn't cite any clinical findings from the relevant period. It's not clear he reviewed those medical records, and the opinion was retrospective. So the ALJ was well within his power to ignore or to discount that opinion and find that Mr. Shuff could work all the way up through the date last insured of September 2008. What about Dr. Greenwald? Dr. Greenwald specifically said that he didn't provide disability evaluations. He didn't provide any functional limitations either. He just said the claimant is disabled. And it's unclear when you look at that opinion whether he was basing that off of the claimant's own reports or any clinical findings. And he didn't relate that opinion back to the period that we're considering here. But it's not, I mean, I guess it's, what, seven, eight months after the date last insured? Seven months? I can't remember the exact dates now. But it's not that long after. And so why couldn't a reasonable inference be drawn that if he shows up and sees Dr. Greenwald in whatever month it was in 2009, that his disabled condition didn't arise the day before he walked in, that it must have arisen some time earlier? I mean, the last of the favorable medical evaluations for the government's position, I think, is in 2006. At least that's what I remember. And then there's this gap. Right. So, I mean, and we know that he did try to work. It wasn't like he was just trying to get out of work. He wanted to be gainfully employed, and he couldn't. So why can't an inference be drawn that sometime prior to when he saw Dr. Greenwald in 2009, but after the point in 2006 when we have, you know, those other medical opinions, that at some point in that period the condition just worsened? Well, normally in these cases when there's a gap in the medical record of the doctor's opinions, we have a two- or three-year gap here, the best case scenario is to have a medical expert review the file. And that's what we have here. The state agency doctor, Dr. Turner, reviewed the file all the way up to 2001 and determined that he could. All the way up to 2001? I mean, sorry, 2011. Yeah, okay. And determined that Mr. Schaff could perform work. And the ALJ gave great weight to that opinion. I mean, it's not a perfect solution, but it's kind of the best we can offer in these cases of a long period of, you know, disabling limitations. If this court were to send this case back for a revisit of this 2006 to 2008 period, we have all the evidence. We have all the medical evidence from that time period. We could call another expert to get another opinion. We already have the expert, and the expert already said that he could work. What's the closest thing we have here to a treating physician? During post-2006? Or anywhere. Well, prior to 2000, Dr. Carl was his primary treating physician through the workers' comp portion of his claim. And from 2002 to 2006, issued seven opinions saying that he could perform work. And most of those opinions are saying that he could do, you know, the meat wrapper position where he would lift up to 50 pounds, the fuel center clerk and the fuel cell attendant positions. Those are probably equivalent to medium to light work in the Social Security system. And the ALJ found he could do sedentary work. So he tempered the residual functional capacity in the claimant's favor. And do we have anything that would look like treating physician after that, after Dr. Carl finishes? What I'm leading up to is I'm trying to figure out if we can treat Nurse Brown as treating, even though not quite treating physician. We know that people actually treat the person we give greater deference to as distinct from somebody who just reads the file. Right. But we, under the regulations in effect in 2015 when the ALJ issued the decision, we give greater weight to a physician who reads the file more so than a nurse practitioner. I understand that, too. They are a treating provider. Nurse practitioner Brown did treat the claimant. But Brown only began treating the claimant close to the date last insured. I've got down in my notes 2009, which would be after the insured period closed. Okay. That's possible. That's when Brown's report is prepared. That's right. But I think I heard from the other side that Nurse Brown had been treating him for quite a long time before that. I might have misheard that. I'm not aware of that in the record. If there are no further questions, I'd like to ask that this court affirm the ALJ's decision. Thank you. Thank you. Why don't we put two minutes on the clock? So Mr. Brown had been treating him since 2001. But I don't see – there's not evidence in the record discussing that. So I think he was kind of his local doctor that he'd go to for a cold and that kind of thing. He wasn't a doctor. He was a nurse. Excuse me. I shouldn't have called him that. Nurse practitioner, Kenneth Brown. And when he went to him, he did go to him. And the record does include records from 2008 where he first saw him. But then he filled out that form in 2009. I can't find Dr. Turner. You know, I think – I don't know. I can't even find him when I'm starting to look all through this thing, through a brief, through my briefs. I can't even find Dr. Turner. But there's been no medical expert in this case that has actually looked at all of the evidence for, let's say, the 2006 through 2008 period and said, this is how it adds up. Not that I'm able to find. The thing that keeps getting missed here, I think – it was missed by the ALJ, and I think it's what could have swung the case for him, even for the entire time period, but we're only focusing on 06 through 08, is that ever since his injury, Chuck has not been able – has needed to lie down. He can't just even sit. He can't sit in that chair for two hours. He testified last year. He's never been able to sit in a chair. That's the worst thing for him. It's why he spends most of his time in the zero-gravity recliner. And so the thought that he could do a sedentary job doesn't make sense because he couldn't sit for extended periods of time. And I should mention, too, before filling out the form, Mr. Brown, Kenneth Brown, reviewed the MRI. It's in his records. He reviewed the MRI from 2008 that was done of his back that showed – so he could see what was the final result of all the surgeries he'd been through that he'd known about from just being his family practitioner. Once again, the rules have just changed, but they don't affect this case. But in the future, a few years from now, you'll be talking about treating nurse practitioners and even treating physician's assistants. So that's what we've got. And I think that Dr. Greenwald's evidence is rather compelling. I mean, he wasn't a disability evaluator, and he was thoroughly convinced that he could not work. Okay. Thank you very much. Thank both sides for your arguments. Nice arguments. Shuff v. Berryhill, submitted.
judges: W. Fletcher, Bybee, Watford